**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JAMES E. RODGERS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 26-cv-880-NJR** |
| **WEXFORD HEALTH SOURCES, INC., DR. PERCY MEYER, DR. REYNAL CALDWELL, DR. ARVINDER ARORA, CENTURION HEALTH, DR. STEPHEN WHEALON, LATOYA HUGHES, DOUG STEPHENS, CHRISTINE VINYARD, DANIEL MONTI, TERRI SCHULTE, JEFFREY WEHKING, JOHN DOE #'s 1-3,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff James E. Rodgers, an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Rodgers alleges that Defendants were deliberately indifferent to his serious medical conditions in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion ofgranted ort that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Rodgers alleges that he has suffered since childhood with multiple congenital heart defects including pulmonary atresia, ventricular septal defect, a double outlet right ventricle, and an aortic aneurysm (Doc. 1, p. 12). He has had six heart surgeries over the course of his lifetime (*Id.*). In 2000, his artificial pulmonary valve was replaced. He was previously informed that the valve had a lifespan up to 20 years, requiring at least yearly evaluations by a cardiologist specializing in rare congenital heart defects to evaluate his condition (*Id.*). But Rodgers alleges that it has been over two years since he has seen a specialist (*Id.*).

Rodgers alleges that Dr. Percy Meyer, Dr. Reynal Caldwell, Dr. Arvinder Arora, and Dr. Stephen Whealon are aware of his condition (Doc. 1, p. 13). Despite this knowledge, they have only referred him to a local cardiologist (*Id.*). Over the last three years, cardiologist Dr. Walter Parham has spoken with Dr. Meyer, Dr. Caldwell, Dr. Arora, and Dr. Whealon indicating that he is not qualified to treat Rodgers's heart defect and recommending that he be seen by a specialist (*Id.*). The doctors have failed to refer Rodgers to a specialist.

Rodgers alleges that due to his issues with medical care at Centralia, he submitted a request for transfer to Doug Stephens (Doc. 1, p. 13). Stephens or his designee (identified as John Doe #2) denied the request, noting that Rodgers sees Dr. Parham for his condition. Rodgers obtained his medical records and submitted the documents to Terri Schulte to

send to Stephens to justify his requested transfer (*Id.*). Rodgers submitted three letters to Schulte requesting a medical transfer to Pontiac, but he has not been transferred to his requested prison (*Id.*). He wants transferred to Pontiac because he previously received adequate medical care at that facility. Without proper supervision of his condition by a specialist, Rodgers alleges that he faces increased risk of stroke, cardiomyopathy, dissection of the aorta, and stenosis of a valve (*Id.*). He currently suffers from chest pains and physical fatigue from performing everyday tasks such as cleaning his cell, carrying anything over 10 pounds, showering, and putting on his clothes (*Id.* at p. 14).

On March 5, 2023, Rodgers was also diagnosed with dual inguinal hernias. The nurse practitioner who diagnosed him recommended consultation with one of the doctors for possible surgical repair (Doc. 1, p. 14). Rodgers met with both Dr. Meyer and Dr. Caldwell, but they refused to examine his hernias or submit a request for surgical repair (*Id.*). Dr. Caldwell specifically stated that he would not fill out the paperwork for a request because the officials who pay the bills would never approve the referral (*Id.*). He noted that if Rodgers kept pressing his request, then no one would want to treat him (*Id.*).

From July 2023 to the present, Rodgers has suffered with pain and discomfort from the hernias (Doc. 1, p. 14). He alleges that nurses documented his pain levels in his medical records. He further alleges that Dr. Caldwell, Dr. Arora, and Dr. Whealon were aware of those notations but still it took over eight months for Rodgers to be prescribed pain medication (*Id.* at p. 15). Twelve months after his diagnosis he finally received a hernia belt, slow walk permit, and low bunk permit (*Id.*). He was eventually sent to a

surgeon for possible hernia repair (*Id*.). The surgeon required that Rodgers first receive clearance from his cardiologist for the hernia repair and noted the repair would need to take place at Barnes Jewish Hospital as an added precaution (*Id*.). Despite the recommendations, neither Dr. Arora nor Dr. Whealon have approved an appointment with the cardiologist (*Id*.). Rodgers alleges that his condition causes sharp pain in his groin area limiting his ability to walk. He also suffers from sleep deprivation and potential side effects including liver and heart injuries due to the lack of treatment (*Id*.).

Rodgers attributes delays in his medical care to policies and practices implemented by the IDOC medical providers, including Wexford Health Sources, Inc. and Centurion (Doc. 1, p. 16). He alleges that the companies try to save money by implementing several policies, including intentionally delaying the utilization management system beyond the 30-day time limit for approving off-site care, deliberately failing to consider levels of pain when approving off-site care, adopting a first come, first approved policy for approving off-site care rather than taking into consideration an individual's risks, and failing to require staff to create sensible treatment plans (*Id*. at pp. 16-17). He also alleges that the companies failed to maintain adequate staffing levels, failed to train staff, and failed to investigate and discipline misconduct (*Id*. at p. 17).

Rodgers alleges that he has filed numerous emergency grievances regarding the ongoing delays in his medical care (Doc. 1, p. 17). The grievances were reviewed by Daniel Monti, Jeffrey Wahking, Latoya Hughes, and unknown designees of Hughes (labeled John Doe #'s 1 and 3). The grievances were all denied (*Id*. at pp. 17-18). Rodgers alleges the grievance officials failed to consult with an independent medical professional

to determine if the medical providers complied with legal and medical standards (*Id.* at p. 18). Instead, the grievance officials relied on the medical judgment of the medical providers at the prison (*Id.*). Rodgers alleges that he also submitted letters to Daniel Monti and Christine Vinyard requesting their intervention in his medical care, but they failed to compel medical staff to comply with legal and medical standards.

### Preliminary Dismissals

Rodgers alleges that Latoya Hughes, Jeffrey Wehking, Daniel Monti, and John Doe #'s 1 and 3 reviewed and denied his grievances regarding his medical care. But the simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (there is no "free-floating obligation to put things to right"). Rodgers also alleges that he wrote letters to Daniel Monti and Christine Vinyard asking them to intervene, but the letters were either ignored or Rodgers was given a response that did not require the medical providers to provide additional care. Rodgers fails to allege when he wrote these letters or the contents of those letters. He also fails to allege when he received a response to the letters. Without more, Rodgers fails to clearly allege that any of these officials were aware of his specific conditions or personally involved in his care. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *Burks*, 555 F.3d at 594 ("[l]iability depends on each defendant's knowledge and actions"). Thus, any claim against Hughes, Wehking, Monti, Vinyard, and John Doe #'s 1 and 3 is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Dr. Meyer, Dr. Caldwell, Dr. Arora, and Dr. Whealon for failing to refer Rodgers to a cardiac specialist.

**Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Dr. Meyer, Dr. Caldwell, Dr. Arora, and Dr. Whealon for delaying Rodgers's surgical treatment for his hernias.

**Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Terri Schulte, Doug Stephens, and John Doe #2 for failing to transfer Rodgers to another prison for treatment.

**Count 4:** Eighth Amendment claim against Wexford Health Sources, Inc. and Centurion for having policies and practices that delayed Rodgers's access to medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

6

**Counts 1 and 2**

To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant has knowledge of his condition and was personally involved in his care. *Burks*, 555 F.3d at 594.

As to Rodgers's allegations in Count 1, he adequately alleges that Dr. Meyer, Dr. Caldwell, Dr. Arora, and Dr. Whealon were deliberately indifferent to his cardiac condition by failing to refer him to a specialist. In Count 2, Rodgers also adequately alleges that the doctors were deliberately indifferent in treating his inguinal hernias, delaying his treatment, access to pain medications, and other assistive devices. Thus, Counts 1 and 2 shall proceed against the doctors.

**Count 3**

Rodgers also alleges that he asked Terri Schulte to provide Doug Stephens, the transfer coordinator, with his medical records documenting his need for a transfer. He alleges that he wrote three additional letters to Schulte requesting a transfer to Pontiac where he previously received what he deems "adequate" care (Doc. 1, p. 13). Doug Stephens and/or John Doe #2 denied his requests for a transfer, stating that he was seeing

a cardiologist at Centralia, and Schulte failed to take any action upon receiving his requests. But there are no allegations to suggest that they acted with deliberate indifference to his medical needs. Rodgers merely alleges that he wanted to be transferred because he believed he would get better treatment at Pontiac Correctional Center. There are no allegations to suggest that his medical conditions required a transfer or that the failure to transfer him caused delays in his care. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) ("Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (internal quotations omitted). In fact, he acknowledges that his cardiologist referred him to a specialist at Barnes Jewish Hospital in St. Louis, Missouri (Doc. 1, p. 13). Thus, nothing in the Complaint alleges that the transfer coordinators acted with deliberate indifference in denying his request for transfer. Instead, it appears Rodgers merely disagreed with the decision to keep him at Centralia for treatment and the mere disagreement in the course of treatment fails to state a claim. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Thus, Count 3 is **DISMISSED without prejudice**.

**Count 4**

As to Rodgers's claim against Wexford and Centurion, the companies can only be liable for deliberate indifference if they had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Rodgers identifies several policies and practices that he alleges caused delays in his care. He

alleges that the companies intentionally delayed the utilization management system beyond the thirty days required for approving off-site medical care and the companies adopted a first come, first authorized reviewal process that reviewed authorization requests as they came in rather than taking into account an inmate's pain, risks to health, and medical history. He alleges both of these practices were adopted to save the companies money. He also alleges that the companies deliberately understaffed the medical units. Thus, Rodgers's claim against Wexford and Centurion shall proceed.

Rogers also alleges that the companies failed to require staff to create certain treatment plans, failed to adequately train employees, and failed to manage or discipline staff. But these claims against the companies fail because the companies cannot be liable for the actions of their employees because there is no supervisory liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

## Motion for Preliminary Injunction

Rodgers alleges that since 2024 he has been informing Dr. Whealon (his current provider at Centralia) that he is experiencing increased shortness of breath, fatigue, heart palpitations, and sharp chest pains signifying issues with his heart, but Dr. Whealon refuses to send him to a cardiologist that specializes in his condition (Doc. 6, pp. 4-5). He has also been diagnosed with two inguinal hernias that require repair, but he requires clearance from a cardiologist before he may be scheduled for surgery (*Id.*). Dr. Whealon allegedly refuses to send him out for clearance and has only provided Tylenol and a hernia belt which is ineffective (*Id.* at p. 5). In his motion for preliminary injunction,

9

Rodgers seeks an immediate referral for an evaluation of his heart condition as well as an evaluation for his fitness for surgery to repair his hernias (*Id*. at p. 9).

Considering Rodgers's request for injunctive relief, Warden Jeffrey Wehking will remain in the case (in his official capacity only) to respond to the request and implement any injunctive relief that may be awarded. All other official capacity claims are **DISMISSED without prejudice**. Given the concerning nature of Rodgers's allegations and the alleged seriousness of his cardiac condition, the Court **ORDERS** Jeffrey Wehking, as well as Dr. Shephen Whealon and Centurion (the current medical providers), to respond to Rodgers's motion. The Court will **DEFER** ruling on the motion for preliminary injunction (Doc. 6), and Defendants are directed to file a response within **14 days** of service.

### Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against Dr. Meyer, Dr. Caldwell, Dr. Arora, and Dr. Whealon. Count 4 shall proceed against Wexford Health Sources, Inc. and Centurion. Because Rodgers seeks injunctive relief, Warden Jeffrey Wehking shall remain in the case in his official capacity only. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Dr. Percy Meyer, Dr. Reynal Caldwell, Dr. Arvinder Arora, Dr. Stephen Whealon, Wexford Health Sources, Inc., Centurion, and Warden Jeffrey Wehking (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this

Memorandum and Order to each defendant's place of employment as identified by Rodgers. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Rodgers, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Rodgers's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Rodgers, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Rodgers is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:  July 9, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**